UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WALTER COX | CIVIL ACTION |
| VERSUS | NO. 10-0101 |
| JAMES LEBLANC, ET AL. | SECTION "B"(4) |

### REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

### I.  Factual Background

#### A.  The Original Complaint

The plaintiff, Walter Cox ("Cox"), is incarcerated in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana.[1] He filed the captioned *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, RCC Warden Robert C. Tanner and Louisiana Department of Corrections Secretary, James LeBlanc, alleging that he fears for his safety.

---

[1] Rec. Doc. No. 1.

The plaintiff generally alleges that officers Jonathan Tyeson (sic), Eric Manning of the "D Team," and all other officers on all other teams purportedly tell other inmates that Cox is a "rat" which results in him receiving threats from other inmates in the jail. He complains that the inmates tell him that they would harm him and probably "kill him." He complains that he notified Warden Tanner, Warden J. P. Miller, and Warden Bickham[2] but yet they have not done anything to stop the threats he has been receiving.

Cox complains that he feels unsafe and would like to be transferred to another facility for his safety. He also seeks to help make other informants safe from harm. He further would like to have the prison officials reprimanded and further require them to behave like professionals.

B.  **The Proposed Amended Complaint**

On May 10, 2010, the Plaintiff filed an Amended Complaint. Although not presented as a motion, the Court, upon review of the submission, construes the filing as a motion for leave to amend.

In the proposed Amended Complaint, Cox contends that he is an individual with diabetes mellitus, or Type I diabetes with juvenile onset. (R. Doc. 4, ¶ 1.) Cox contends that, on the night of March 16, 2010, at 6:30 p.m., Sergeant Jackson checked his blood sugar which was at 388. Jackson called the nurse and took no further action. (R. Doc. 4, ¶ 3.) At 7:45 p.m., the nurse, Wendy Seal ("Seal") , checked Cox's sugar which was at 412. Seal informed Cox that "she was not going to give [Cox] any coverage, [because] she wanted to see what would happen to [Cox's] sugar [levels]." (R. Doc. 4, ¶ 3.) At 9:00 p.m., Cox again had his sugar levels checked, which were at 380.

---

[2] Cox wrote a letter to Warden Tanner and it was responded to by Keith Bickham, the Deputy Warden. Bickham advised Cox that he openly talks to security in the presence of offenders which allows the offenders to make these type allegations about him that he is an informant, whether true or not. Bickham acknowledged that Cox was moved three times in order to get him out of conflict with other offenders and that Cox continues to allow the other inmates believe that he is an informant, resulting in threats from other inmates. Bickham denied that the officers are spreading the rumors but indicate that it's the offenders who make the statements in order to get him upset. Bickham advised Cox to not let these other offenders "push his buttons".

The following morning, March 17, 2010, at 4:05 a.m., Nurse Laura Young ("Young") checked Cox's sugar levels, which was at 380. Young then gave Cox his "morning medicine" of five units of insulin. (R. Doc. 4, ¶ 3.) Shortly thereafter, Seal informed Cox that she was not going to give him any additional insulin shots or snacks in order to determine what type of reaction Cox's body would have. (R. Doc. 4, ¶ 4.) Cox contends that Seal put his health at serious risk. *Id.*

Cox filed his proposed Amended Complaint seeking compensatory damages in the amount of $200,000 from the Nurse Director, Bessie Carter. (*See* R. Doc. 4.) Presumably, Cox seeks to recover from Carter for Seal's failure to provide Cox with insulin injections.

## II.  Standard of Review

Title 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c) require the Court to sua sponte dismiss cases filed by prisoners proceeding in forma pauperis upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly

baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**III.    Analysis**

    **A.    The Original Complaint**

Cox filed his original Complaint seeking a transfer to another facility. Cox contends that he is an informant and has been labeled as a "rat" by the prison officials. He contends that the prison officials have informed the other inmates that he is a "rat" which has subjected him to several threats from other inmates. Cox contends that he reported this problem to Warden Tanner in a letter, who failed to respond.[3]

Title 42 U.S.C. § 1997e(e) provides that "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

In the instant case, Cox has not alleged that he was injured or harmed in any way. Instead, he merely alleges that he has a conflict with other inmates due to his perceived status as an informant. However, no physical harm has been alleged.

Furthermore, Cox alleges that he is fearful and seeks a transfer, which this Court is not empowered to do. It is well settled that the due process clause does not, by itself, give a prisoner a protected liberty interest in the location of his confinement even if the environment of one prison may be "much more disagreeable" to the prisoner than in another. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Further, a prisoner has no liberty interest in being housed in any particular facility where the state statute vests discretion to the state officials to carry out their official function. *See Olim v.*

---

[3] As noted above, the record shows that Deputy Warden Keith Bickham responded to Cox's concerns in a letter. Bickham indicated that Cox had already been moved on three separate occasions to remove him from conflict with other inmates. (*See* Note 2, *supra*).

*Wakinekona*, 461 U.S. 238, 244-45 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir.1996); *see also Yates v. Stalder*, 217 F.3d 332 (5th Cir. 2000).

Louisiana Revised Statute § 15:824, authorizes the Director of Corrections to decide which penal institution an inmate should be delivered or transferred.[4] The Director of Corrections has broad discretion regarding the placement and transfer of state prisoners. *See Santos v. La. Dept. of Corr. Secretary*, 1996 WL 89260 at *4 (E.D. La. Feb. 28, 1996) (noting that La. Rev. Stat. Ann. § 15:824(A), (B) does not give Department of Corrections prisoners a constitutionally protected right to be housed in a particular facility); *see also* La. Rev. Stat. Ann. § 15:566(B); *State v. Sylvester*, 648 So.2d 31, 33 (La. App. 4th Cir. 1994).

Thus, the State of Louisiana, by its broad discretionary statutes, has not created a protected liberty interest in being housed in a particular prison or being transferred from one prison to another. *Santos*, 1996 WL 89260 at *4. Therefore, Cox has no constitutional right to a transfer and his request for transfer is frivolous.

---

[4] La. Rev. Stat. Ann. §15:824(A) and (B) provide in pertinent part:

A. Notwithstanding any provision of law to the contrary, any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The director of corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department; however, no juvenile may be transferred to a penal or correctional facility for persons committed by a court having criminal jurisdiction except in accordance with the provisions of R.S. § 15:1062.

B. (1)(a) In the event any individual has been committed to the department for confinement which is or has been delayed or prevented after final sentence by court order restricting the department from institutionalizing the individual, or when the individual is not institutionalized in a state penal or corrections institution because of lack of facilities under the control of the department, or the department otherwise refused to accept the individual for confinement, which resulted or has resulted in the individual being confined in a parish jail or institution after final sentence, or when he is being held in the parish jail without bail, pending an appeal, the department shall pay to each parish sheriff, or to the governing authority of those parishes in which the governing authority operates the parish jail, for keeping and feeding the individual in the parish jail the sum of twenty-one dollars per day from date of sentencing until the individual is confined in a penal or correctional institution under the supervision of the department. . . .

As a result, the Court finds that Cox's original Complaint should be dismissed pursuant to 28 U.S.C. § 1915e(2) and 42 U.S.C. § 1997(e)(1) as it is frivolous and fails to state a claim for which relief may be granted.

### B.     The Proposed Amended Complaint

In his proposed Amended Complaint, Cox seeks compensatory damages because Seal declined to administer insulin to him.  Plaintiff's proposed Amended Complaint thus seeks to assert unrelated claims against a different defendant than included in the original Complaint.  When a litigant asserts diverse claims against multiple defendants, the courts may *sua sponte* consider whether the parties and claims are properly joined in one action.  *See* Fed.R.Civ.P. 21; *Richardson v. Proctor & Gamble*, No. 3:07-CV-2038-K, 2008 WL 483337, at * 2 (N.D. Tex. Feb. 18, 20008)(accepting recommendation of Mag. J.)

Although a party may generally join any claims it has against an opposing party under Fed.R.Civ.P. 18(a), it must satisfy Fed.R.Civ.P. 20(a)(2) if other opposing parties are also named. Rule 20(a)(2) permits joinder of multiple defendants in a single law suit only when: (1) the plaintiff asserts a right to relief against each defendant relating to or "arising out of the same transaction, occurrence, or series of transactions or occurrences;" and (2) a "question of law or fact common to all defendants will arise in the action."  *See also Applewhite v. Reichhold Chem., Inc.,* 67 F.3d 571, 574, n. 11 (5th Cir. 1995).  Requiring parties to assert unrelated claims against different defendants in separate complaints avoids unduly cumbersome litigation, and in the context of prisoner litigation, ensures that prisoners pay the required filing fees under the Prison Litigation Reform Act.  *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Here, Cox's claims against the Nurse Director, Bessie Carter, are wholly unrelated to his claims against LeBlanc, the Secretary of the Louisiana Department of Corrections, and the Warden, Robert

6

Tanner.  Furthermore, his claims arise out of an entirely different set of circumstances than his original Complaint.  In his proposed Amended Complaint, Cox seeks compensatory damages for the nurse's failure to provide him with insulin for his diabetes.  In his original Complaint, Cox seeks a transfer to a different facility because of the fear he experiences because other inmates thinks he is a "rat."  These claims are completely unrelated and share no common question of law or fact.  As a result, the Court finds that claims asserted in the proposed Amended Complaint should be pursued in a separate action by filing a civil complaint in the proper court.

Furthermore, Cox's proposed Amended Complaint seeks to invoke a medical indifference claim.  The standard of conduct imposed on defendants with respect to medical care of inmates was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976).  In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment.  *Id.* at 104.  This is true where the indifference is manifested by prison doctors in their response to the prisoner's needs.  It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  *Id.*

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.  *Id.*  Further, disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs."  *Norton*, 122 F.3d at 292.  Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does not.  *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action"); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere

negligence in giving or *failing to supply* medical treatment would not support an action under Section 1983" (emphasis added)); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

In addition, the mere delay alone in receiving medical treatment is usually not sufficient to state a claim under § 1983. *Mendoza*, 989 F.2d at 195; *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990); *Simmons v. Clemons*, 752 F.2d 1053, 1056 (5th Cir. 1985). Regardless of the length of the delay, the plaintiff at a minimum must show deliberate indifference to a serious medical need to rise to the level of a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294 (1991); *see also Estelle,* 429 U.S. at 104-05.

In the case at bar, Cox does not allege facts sufficient to rise to the level of a constitutional violation. Accepting his allegations as true, Cox was examined by Seal at 7:45 p.m. on March 16, 2010. At that time, Cox's sugar level was at 412. Seal informed Cox that she was not going to give him insulin because she wanted to see the effect it would have on his body. His sugar levels subsequently decreased, and the following morning, he was provided with his five units of insulin. While Cox disagrees with the course of action that Seal took in treating his diabetes, an inmate's disagreement with his medical treatment does not give rise to a constitutional claim under § 1983. *Cosey v. Gusman,* 2007 WL 2710804 at * 4 (E.D. La. Sept. 12, 2007)(Roby, J.); *Norton v. Dimazana*, 122 F.3d 186, 292 (5th Cir. 1997). Therefore, Cox's claim is frivolous.[5] As a result, Cox's motion to amend his Complaint should be denied.

## IV.     Recommendation

It is therefore **RECOMMENDED** that Walter Cox's Complaint be **DISMISSED** as frivolous pursuant to Title 28 U.S.C. § 1915e(2) and 42 U.S.C. § 1997(e)(1).

---

[5] The Court also notes that there is no indication in the records that Cox exhausted his administrative remedies before pursuing his claim against the Nurse Director, Bessie Carter.

**IT IS FURTHER RECOMMENDED** that Walter Cox's Motion to Amend the Complaint be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[6]

New Orleans, Louisiana, this 9th day of December, 2010.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[6] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.